UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                            **CIVIL ACTION NO.** 2:10-cv-1406

**$599,274.58, MORE OR LESS,
IN UNITED STATES CURRENCY,**

        **Defendant.**

**(Diane E. Shafer, M.D.,
No pending federal criminal charges)**

## VERIFIED COMPLAINT OF FORFEITURE

Comes now the United States of America, by and through its attorneys, R. Booth Goodwin II, United States Attorney for the Southern District of West Virginia, and Betty A. Pullin, Assistant United States Attorney for the Southern District of West Virginia, and respectfully states as follows:

### NATURE OF THE ACTION

1. This is a civil action _in rem_ brought on behalf of the United States of America, pursuant to 18 U.S.C. § 983(a), to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of various sums of money which were furnished or intended to be furnished in exchange for one or more controlled substances, or constitute proceeds traceable to such an exchange, or which were

used or intended to be used to facilitate one or more controlled substance violations, 21 U.S.C. §§ 801 et seq.

2. In the alternative, at least $40,660.00 of the defendant currency was involved in one or more violations of 31 U.S.C. § 5324 (structuring deposits to evade the currency transaction reporting requirements of 31 U.S.C. § 5313(a)) and, therefore, is also subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2) and 18 U.S.C. § 981(a)(1)(A).

3. Further in the alternative, any and all billings to and payments by Mountain State Blue Cross Blue Shield for medical services allegedly performed by Dr. Shafer and her staff, but which actually were not performed, constitutes mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and any of the defendant currency constituting or derived from proceeds traceable to such violations is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7).

## THE DEFENDANTS IN REM AND POTENTIAL INTERESTED PARTIES

4. The defendant currency totaling $599,274.58, more or less, consists of the following:

(A) $302,700.00, more or less, in United States currency (CATS No. 10-FBI-001707), constituting sums of currency seized from two safe deposit boxes at Branch Banking & Trust (BB&T), 250 East Second Avenue, Williamson, West Virginia, that is, from Safe

Deposit Box No. 788, leased in the names of "Diane E. Shafer and Sara T. Shafer," containing United States currency totaling $36,250.00, more or less, and from Box No. 842, leased in the names of "Diane Shafer, Sara Ann Shafer, and Joyce Vinson, deceased," containing United States currency totaling $266,450.00, more or less.[1]  The contents of both safe deposit boxes were seized pursuant to a federal search warrant executed on them on January 15, 2010;

(B) $17,546.13, more or less, in United States currency (CATS No. 10-FBI-001733), constituting the balance of Account No. XXXXXX4279, Branch Banking & Trust (BB&T), 250 East Second Avenue, Williamson, West Virginia, in the names of "Diane Shafer and Sara T. Shafer," which was seized by the Federal Bureau of Investigation (FBI), pursuant to a federal seizure warrant executed on or about January 15, 2010;

(C) $72,541.03, more or less, in United States currency (CATS No. 10-FBI-001851), constituting the balance of Account No. XXXXXX6061, BB&T, Williamson, West Virginia, in the name of "Diane Shafer," which was seized by the FBI pursuant to a federal seizure warrant executed on or about January 15, 2010;

---

[1] Although there are other individuals whose names are on the account records for these safe deposit boxes, the Entrance Records for both boxes reveal that Diane Shafer is the only person who has accessed them.  With regard to Box 842 in particular, Diane Shafer is the only person who has accessed that box since at least February 16, 2000.

(D) $52,557.46, more or less, in United States currency (CATS No. 10-FBI-002616), constituting the balance of Certificate of Deposit Account No. XXXXXX8611, BB&T, Williamson, West Virginia, in the name of "Diane Shafer," which was seized by the FBI pursuant to a federal seizure warrant executed on or about January 15, 2010;

(E) $34,065.96, more or less, in United States currency (CATS No. 10-FBI-001980), constituting the balance of Account No. XXXXXX1820, BB&T, Williamson, West Virginia, in the names of "Diane Shafer and Kevin R. Maynard," which was seized by the FBI pursuant to a federal seizure warrant executed on or about January 15, 2010;

(F) $94,579.00, more or less, in United States currency (CATS No. 10-FBI-002639), constituting $90,830.00, more or less, found in a bedroom and $3,749.00, more or less, found on the first floor of the residence of Diane E. Shafer, 110 West Second Avenue, Williamson, Mingo County, West Virginia, during the execution of a search warrant on the same residence on or about March 2, 2010; and

(G) $25,285.00, more or less, in United States currency (CATS No. 10-FBI-002641), seized on March 2, 2010, from the office Dr. Diane E. Shafer, 114 West Second Avenue, Williamson, Mingo County, West Virginia, during the execution of a federal search warrant.

5. The currency identified in paragraphs 2(A) through (G) above is presently in the custody of the United States Marshals Service for the Southern District of West Virginia.

## JURISDICTION AND VENUE

6. Plaintiff, United States of America, brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

7. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. 1355(b) since the acts giving rise to forfeiture occurred in this district.

8. Upon the filing of this verified complaint, the plaintiff requests that the Clerk of this Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will have executed upon the defendant property, pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

9. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district and, pursuant to 28 U.S.C. § 1395(b), because the property is located in this district.

## BASIS FOR FORFEITURE

10. The basis for forfeiting the defendant currency is as follows:

(A) At all relevant times, Diane E. Shafer, M.D., was a licensed physician practicing medicine in Williamson, Mingo County, West Virginia, and within the Southern District of West Virginia;

5

(B)  Dr. Shafer was registered with the Drug Enforcement Administration pursuant to 21 U.S.C. § 823 and, as such, was authorized to issue prescriptions for controlled substances for legitimate medical purposes in the usual course of professional medical practice and within the bounds of medical practice;

(C) Dr. Shafer was subject to the West Virginia Board of Medicine Medical Practice Act and Rules, which subjected physicians otherwise lawfully practicing in this state to disciplinary action including disqualification for prescribing or dispensing a prescription drug, including any controlled substance under state or federal law, other than in good faith and in a therapeutic manner in accordance with accepted medical standards, and for gross negligence in the use and control of prescription forms;

(D) From at least December 2002 through and including January 15, 2010, Dr. Diane E. Shafer and others, including but not limited to the staff at her medical office at 114 West Second Avenue, Williamson, Mingo County, West Virginia, conspired to commit offenses, and did in fact commit offenses, in violation of 21 U.S.C. § 841(a)(1) (unlawful distribution of hydrocodone and alprazolam, Schedule III and IV controlled substances) and 843(a)(2), that is, knowingly and intentionally using and causing others to use a registration number which was issued to her and one or more registration numbers issued to others, in the course of the distribution of and for purposes of acquiring and obtaining

hydrocodone, a Schedule III controlled substance, and alprazolam, a Schedule IV controlled substance, in violation of 21 U.S.C. § 846.

11. The defendant currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C. §§ 801 et seq., or is proceeds traceable to such an exchange, or was used or intended to be used to facilitate one or more controlled substance violations.

12. At least $40,660.00 of the defendant currency seized from BB&T Account No. XXXXXX6061 was involved in one or more violations of 31 U.S.C. § 5324 (structuring deposits to evade the currency transaction reporting requirements of 31 U.S.C. § 5313(a)) and, therefore, is also subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2) and 18 U.S.C. § 981(a)(1)(A).

13. Any of the defendant currency that constitutes or was derived from proceeds traceable to false billings submitted by Dr. Shafer and her staff to Mountain State Blue Cross Blue Shield, in violation of 18 U.S.C. §§ 1341, 1343, is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7).

## NOTICE OF THE INTENTION OF THE UNITED STATES
## TO INVOKE THE PROVISIONS OF 18 U.S.C. § 984

14. The United States hereby gives notice of its intent to invoke the provisions of 18 U.S.C. § 984 with regard to the monies seized from the two safe deposit boxes and the four bank accounts at BB&T which are more particularly identified in paragraphs 2(A) through (E) of this Verified Complaint of Forfeiture. The effect of this provision is to relieve the government from any tracing requirement of those funds if the statutory conditions in 18 U.S.C. § 984 are met. The primary offenses giving rise to forfeiture of the defendant currency are violations of 21 U.S.C. §§ 841(a)(1), 843(a)(2) and 846, which occurred between December 2002 and January 15, 2010. Those offenses form the bases for the United States forfeiture claim and this civil action is being commenced within one year of those offenses.

## FINANCIAL ANALYSIS AND FORFEITABILITY OF DEFENDANT PROPERTY

### A. BACKGROUND: DR. SHAFER'S MEDICAL PRACTICE

15. Dr. Diane E. Shafer graduated from the Temple University School of Medicine, Philadelphia, Pennsylvania, in 1976. Dr. Shafer was originally licensed to practice medicine by the West Virginia Board of Medicine on September 8, 1980.

16. Dr. Shafer owns and operates a medical practice/office at 114 West Second Avenue, Williamson, Mingo County, West Virginia,

25661. According to records of the West Virginia Board of Medicine (and at all relevant times indicated in this verified complaint), this address was listed as Dr. Shafer's primary work location and her primary and secondary specialties were orthopaedic surgery and emergency medicine.

17. During the latter part of 2009, the West Virginia State Police (hereinafter the WVSP) initiated an investigation after receiving numerous complaints from individuals that at least one of Dr. Shafer's staff was providing them with prescriptions signed by Dr. Shafer in exchange for cash or drugs. That staff member was identified as Lisa Baisden.

18. On or about December 1, 2009, members of the WVSP Bureau of Criminal Investigation interviewed Baisden at her home in Dingess, Mingo County, West Virginia. During this interview, Baisden told the officers that she had been employed by Dr. Shafer for approximately seven (7) years and that her job responsibilities included maintaining daily "Patient Registers" which listed each patient's name, date of birth and payment method. She was also responsible for billing private insurance companies to the extent insurance was accepted as payment by Dr. Shafer.

19. Baisden admitted that she had been providing fraudulent prescriptions to Dr. Shafer's patients for approximately twelve months and that she had provided fraudulent prescriptions to approximately 20 to 30 patients on countless occasions. Patients

paid Baisden for their prescriptions with cash or a portion of the pills illegally obtained by the patients.

20. Baisden stated that the medical office would remain open even if Dr. Shafer was out of town and that she had no way of contacting the doctor when she was gone, however, Dr. Shafer had directed the staff to continue handing out prescriptions to patients in her absence. Baisden knew she did not have prescriptive authority but that she and another employee of Dr. Shafer's would hand out the prescriptions when the doctor was not in the office. To enable her and other office staff of Dr. Shafer's to hand out the prescriptions, Dr. Shafer would fill out and sign the prescriptions and place them in the patients' files with the date left blank. The prescriptions were typically for hydrocodone, a Schedule III controlled substance, and alprazalom, a Schedule IV controlled substance.

21. Office staff would inform Dr. Shafer when patients were going to be overlapping prescriptions by coming into the office for controlled substances before they should have taken all the drugs, if they were taken as prescribed. Dr. Shafer would either disregard her staff or would change the date on the note that the staff would leave her informing her of when the patient had last visited the office.

22. The Patient Registers maintained by office staff indicate that Dr. Shafer "sees" in inordinate amount of patients on a daily

basis and that the average patient spends a matter of seconds with the doctor.  Dr. Shafer does not bill Medicare and patients with Medicare pay $20 per office visit while those without Medicare generally pay $75 per office visit.

23. On December 4, 2009, a state search warrant signed by Magistrate Judge Eugene Crum was executed at Dr. Shafer's office in Williamson.  During the execution of the search warrant, pre-written prescriptions were located.  When asked by a state trooper why she was pre-writing and signing prescriptions, Dr. Shafer advised that she did this so she would know what to give her patients.  Also seized during the search warrant were over 75 pre-written prescription forms for Dr. Shafer's patients.  Pre-signing prescriptions by a physician is a violation of W. Va. Code § 30-3-14(c)(19) and is considered to be gross negligence in the control and use of prescriptions.

24. The condition of Dr. Shafer's office, as observed by officers executing the state search warrant, indicated it would be physically impossible for her to utilize her examining tables to examine patients.  Dr. Shafer claimed that she examined her patients "at another location."

25. During regular office hours at Dr. Shafer's office, a line of people forming to see Dr. Shafer would reach the sidewalk and then continue down the street.  Sometimes as many as 30 people would be waiting outside of the office.

11

26. One patient has described Dr. Shafer's practice as running patients through her office "like cattle," performing little to no examination or medical tests other than taking the patient's weight on the first visit, and charging $150 to $200 for that initial visit and $75 for each subsequent visit. On some occasions, Dr. Shafer would collect the examination fees herself. Dr. Shafer did not perform any medical examinations on the patient but provided the patient with prescriptions.

27. Patient files seized by the WVSP during its search reveal that for each office visit, a patient's blood pressure, weight and ailments were listed on the chart, but there were no doctor's notes nor any referrals for treatment of the patient's ailments.

28. The West Virginia Board of Pharmacy's doctor's report for Diane E. Shafer, M.D., revealed that in 2009, patients of Dr. Shafer filled controlled substance prescriptions in the State of West Virginia on 17,065 occasions.

29. The West Virginia monitoring program keeps a running tally of the number of controlled substance prescriptions written under a physician's DEA number. Since the start of the program in approximately December 2002 through the present, 118,445 controlled substance prescriptions have been filled under Dr. Shafer's DEA number at West Virginia pharmacies. A comparison of Dr. Shafer's prescription-writing practices to four Charleston-based physicians, two of whom specialize in internal medicine and two in pain

management, revealed that Dr. Shafer's patients had more controlled substance prescriptions filled on a given day than all four of the Charleston doctors combined.

30. On December 15, 2009, and in connection with her being informed of a federal investigation into her alleged criminal conduct, Dr. Shafer signed a voluntary surrender of controlled substances privileges form, DEA Form 104. In this form, Dr. Shafer agreed to voluntarily surrender her controlled substances privileges in view of her alleged failure to comply with federal requirements pertaining to controlled substances.

31. On December 18, 2009, Dr. Shafer sent the West Virginia Board of Medicine a letter formally notifying the Board that she was surrendering her license to practice medicine due to medical reasons. The surrender of the license was effective immediately.

### B. FINANCIAL ANALYSIS:

32. The Patient Registers maintained by Lisa Baisden and which she provided to the WVSP, and additional Patient Registers maintained by Dr. Shafer which were seized by the WVSP during the execution of its state search warrant on December 4, 2009, were consistent with each other and generally establish the following:

(A) On average, Dr. Shafer "saw" one hundred thirteen (113) patients per day. Inasmuch as the total cash intake for the 13 days of Patient Registers that Lisa Baisden provided was

approximately $89,000, the <u>daily</u> cash intake for those same days and Patient Registers during that time, not including insurance payments, was $6,800.

(B) The Patient Registers indicated that Dr. Shafer's office was open four days a week. Using the figures established in paragraph (A) above, if Dr. Shafer and her staff opened her office 50 weeks in a calendar year, four days a week, Dr. Shafer's total cash intake would be approximately $1.36 million for one year, excluding funds obtained through the billing of insurance.

(C) Since the West Virginia monitoring program records establish that Dr. Shafer's DEA registration has been used excessively since December 2002 for controlled substance prescriptions (see, paragraph 29 above), it is estimated that Dr. Shafer may have grossed in excess of $7 million in cash payments from December 2002 through January 15, 2010.

### BB&T ACCOUNT NO. XXXXXX6061:

33. In addition to the cash intake reflected by the Patient Registers in paragraph 32(B) above, Dr. Shafer also billed Mountain State Blue Cross Blue Shield for alleged medical services performed on patients having their health insurance coverage through Mountain State BC/BS. A review of checks from Mountain State BC/BS to Dr. Shafer in 2008, 2009 and early 2010 revealed that they were being deposited into Dr. Shafer's BB&T Account No. XXXXXX6061.

34. An analysis of the withdrawals from and other deposits into Dr. Shafer's BB&T Account No. XXXXXX6061 indicates that this account allegedly was used as her primary business account.

35. Between January 2, 2009 and January 13, 2010 (the date on which the account was seized), numerous deposits totaling $284,472.22 were made into this account from various sources including, but not limited to, cash deposits and deposits of checks from Mountain State Blue Cross Blue Shield. The only known source of income for Dr. Diane E. Shafer is from her medical practice, therefore, the cash deposits allegedly consist of the cash payments received from patients at her medical office for the illegal prescriptions, unlawful distribution of controlled substances and conspiracy to do the same, in violation of 21 U.S.C. §§ 841(a)(1), 843(a)(2) and 846. As such, those monies are forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6). Since the total of the deposits significantly exceeds the balance of the account at the time of its seizure, the entire balance of the account, that is, $72,541.03, more or less, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 984.

36. Additionally, office staff and patients have stated that little if any medical examination or procedures were conducted on patients, therefore, any billings to Mountain State Blue Cross Blue Shield for medical procedures billed but not actually performed on patients, and any payments made by Mountain State as a result of

such billings, constitute violations of 18 U.S.C. § 1341 (if the billings and payments occurred through the use of the United States mails) and 18 U.S.C. § 1343 (if the billings and payments occurred electronically). All proceeds derived from such billings and payments are forfeitable to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7), and 18 U.S.C. § 984.

37. Furthermore, on January 6, 2010, just one week prior to the bank accounts being seized, Dr. Shafer visited the Williamson, West Virginia, branch of BB&T. Dr. Shafer allegedly asked a teller how much money she could deposit before the teller was obligated to report the amount of cash being deposited. Dr. Shafer allegedly told the teller that she needed to put $40,000 into her account by the middle of the month to pay her taxes. The teller advised Dr. Shafer that she would have to prepare a Currency Transaction Report (CTR) for any cash deposits over $10,000 and that she would need Dr. Shafer's identification in order to complete the paperwork.

38. On January 12, 2010, Dr. Shafer returned to the same teller's window after 2 p.m. and deposited $5,900 in cash. Dr. Shafer then returned to that same teller's window on January 13, 2010, before 2:00 p.m. Dr. Shafer allegedly handed the teller $4,500 in cash to deposit but then asked the teller if she remembered how much she had deposited the previous evening, to which the teller responded that she thought Dr. Shafer had deposited

16

$5,960 the previous afternoon. Dr. Shafer then allegedly asked the teller to give her back $500. Dr. Shafer then deposited $4,000.

39. A review of the deposits into BB&T Account No. XXXXXX6160 between January 7 and 13, 2010, establish that Dr. Shafer structured the $40,660 to pay her taxes in eight deposits into the account, to wit:

```
(A) January 7, 2010:    $ 6,000.00;
(B) January 8, 2010:      3,000.00;
(C) January 9, 2010:      5,000.00;
(D) January 11, 2010:     6,000.00;
(E) January 12, 2010:     5,000.00;
(F) January 12, 2010:     5,960.00;
(G) January 13, 2010:     4,000.00;
(H) January 13, 2010:     5,700.00

    Total              $ 40,660.00
```

in violation of 31 U.S.C. § 5324 (structuring deposits to evade the currency transaction reporting requirements of 31 U.S.C. § 5313(a)). Accordingly, $40,660 of the proceeds seized from this account are also subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2), and 18 U.S.C. §§ 981(a)(1)(A), 984.

### BB&T SAFE DEPOSIT BOXES 788 AND 842; BB&T ACCOUNT NOS. XXXXXX1820, XXXXXX4279; AND BB&T CERTIFICATE OF DEPOSIT ACCOUNT NO. XXXXXX8611:

40. The Entrance Record for Safe Deposit Box 788 shows that Dr. Shafer accessed the Safe Deposit Box on two occasions prior to and immediately after structuring the funds described in paragraph 39 above, that is, on January 8, 2010 and on January 14, 2010.

41. Due to the large volume of cash intake with her medical practice as evidenced by the Patient Registers referenced in paragraph 32 of this Verified Complaint and by the statements of office staff and patients, and further since the combined balances of the four bank accounts, or the total deposits in those accounts, do not come anywhere close to the total estimated cash intake of $1.36 million just for 2009 alone, it is more probable than not that the currency seized from both safe deposit boxes constitutes proceeds from the violations allegedly committed with regard to Dr. Shafer's medical practice, that is, violations of 21 U.S.C. §§ 841(a)(1), 843(a)(2) and 846, and therefore is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 984 as applicable.

42. Likewise, it is more probable than not that the currency seized from BB&T Account Nos. XXXXXX1820 and XXXXXX4279, and from BB&T Certificate of Deposit Account No. XXXXXX8611 constitutes proceeds from the controlled substance violations and, therefore, is also subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 984 as applicable.

## CONCLUSION

WHEREFORE, the United States prays that process of warrant <u>in rem</u> issue for the arrest of the defendant currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

    Respectfully submitted,

    UNITED STATES OF AMERICA
    By Counsel

    R. BOOTH GOODWIN II
    United States Attorney

By:   s/Betty A. Pullin
    Betty A. Pullin, WV Bar Number: 5590
    Attorney for the United States
    United States Attorney's Office
    300 Virginia Street, East, Room 4000
    Charleston, West Virginia 25301
    Telephone: (304) 345-2200
    Fax: (304) 347-5440
    Email: betty.pullin@usdoj.gov

**VERIFICATION**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO-WIT:

I, James F. Lafferty II, Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture in rem is based upon reports and information I have gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on December 22, 2010.

_____
JAMES F. LAFFERTY II

Taken, subscribed and sworn to before me this 22nd day of December, 2010.



_____
Notary Public

My commission expires on __May 25, 2014__.